297 So.2d 722 (1974)
GENMAR OIL & GAS, INC.
v.
James C. STORM.
No. 5794.
Court of Appeal of Louisiana, Fourth Circuit.
July 10, 1974.
Rehearing Denied August 5, 1974.
Writ Granted October 18, 1974.
*723 James R. Pertuit, New Orleans, for plaintiff-appellant.
Liskow & Lewis, Gene W. Lafitte, New Orleans, for defendant-appellee.
Before BOUTALL, J., and NOBILE, and LEON, JJ. Pro Tem.
EUGENE E. LEON, Jr., Judge Pro Tem.
The defendant by virtue of a mineral lease, caused to be drilled on the leased property two wells, the first of which was abandoned and the second of which was brought in as a gas-producing well. At the time of completion of the second well, September 25, 1970, there was no order of the Louisiana Department of Conservation unitizing any other land with the leased land on which the gas well was producing. By Order No. 867 of the Louisiana Department of Conservation, the land of the plaintiff was placed in a unit with the producing land of the defendant, said unitization to become effective December 1, 1970. On January 13, 1971 a summary of the drilling costs was forwarded by the defendant to the plaintiff. The plaintiff refused to pay their share alleging that in accordance with Louisiana Revised Statutes, Title 30, Sections 103.1 and 103.2 more than 90 days had elapsed since the completion of the well and the defendant had forfeited his rights to demand payment of plaintiff's share of the drilling costs.
Plaintiff filed suit for a Declaratory Judgment praying that there be judgment against the defendant, declaring that defendant had forfeited his rights to demand a contribution from plaintiff for the drilling costs.
Defendant filed an answer admitting to all the factual issues and then moved for a summary judgment because there was no genuine issue of material fact, and the defendant was entitled to judgment as a matter of law.
The issue of the correctness of the summary of drilling costs was brought up in the lower Court, but this is a matter for an Administrative Hearing and was not properly before the Court and will not be considered at this time.
The lower Court granted a Motion for Summary Judgment in favor of the defendant, dismissing plaintiff's suit, to which ruling the plaintiff has appealed.
*724 We are of the opinion that the lower Court properly granted a Summary Judgment and the only issue which we will consider is whether or not the trial judge's judgment was legally correct.
The issue is whether the demand was timely made upon plaintiff, Genmar Oil & Gas, Inc., as required by law. Louisiana Revised Statutes Title 30, Section 103.1, states:
"Whenever there is included within a drilling unit, as authorized by the commissioner of conservation, lands producing oil or gas, or both, upon which the operator or producer has no valid oil, gas or mineral lease, said operator or producer shall report to the owners of said interests, by a sworn, detailed, itemized statement, the costs of the drilling operations of said unit within ninety calendar days from the completion of the well. Reports shall be sent by registered mail to each owner of an unleased oil or gas interest who has requested such report and furnished his name and address to the operator or producer."
A reading of the statute indicates that there are two necessary elements. First, that there is a unitization; second is that there is a completion of a well within the unit. The statute therefore contemplates that there is a unitization before a well is completed in the unit and the operator has ninety calendar days from the completion of the well to submit to the owners of interests a sworn, detailed, itemized statement, the cost of the drilling.
The facts show that both parties are the owners of mineral leases on adjoining property located within Wilcox Sand Unit D. Storm drilled Fagis Swim No. 2 well completing it as a gas well on September 25, 1970. The well was drilled by defendant at his own expense as a lease well, there having been no unitization as yet. After due proceedings, the Department of Conservation issued its order No. 867 dated October 27, 1970, to be effective December 1, 1970, establishing units for production of gas from the Wilcox zones of the Columbia Field in Caldwell Parish and the Swim well was designated as the Unit well for Unit D.
On November 5, 1970 Genmar wrote Storm a letter advising Storm of Genmar's ownership of leases within the Unit and requested statements of the cost of drilling, completing and equipping the well. By letter dated December 18, 1970, Genmar again wrote Storm, calling attention to the fact that defendant had failed to comply with the provisions of R.S. 30:103.1.
By letter dated December 23, 1970 Storm advised Genmar that the accounting department was compiling the developmental expenses on the lease, that he had not yet received the Unit platform, and that the necessary information was forthcoming. Finally on January 13, 1971, Storm furnished Genmar the sworn, detailed, itemized statement of costs of the drilling operations of the Unit.
There is no dispute as to the facts and the sole question is the interpretation of R.S. 30:103.1 and 103.2. Section 103.1 requires furnishing of a statement of costs of drilling operations to owners of unleased interest within 90 calendar days from the completion of the well. Section 103.2 provides that when the operator or producer permits (1) 90 calendar days to elapse from the completion of the well and (2) 15 additional calendar days to elapse from the date of receipt of written notice by Registered Mail from the owner of unleased interest calling attention to failure to comply with Section 103.1, the operator shall forfeit his right to demand contribution from the owner of the cost of drilling operations. An examination of the facts set forth above disclose that the information furnished on January 13, 1971 was more than 90 days from the completion of the well and more than 15 days from the letter of notice of failure. Storm points out however that the well was drilled before there was any unitization, and that he furnished the required information within 90 days of the unitization order, hence he *725 contends he is in compliance with the statute because until such time as there is a unitization order, he has no way of compliance with the statute.
We are of the opinion that L.R.S. 30:103.1 creates a hardship on those persons who drill on leased property that is not within a unit at the time of completion of a well.
Article 21 of the Louisiana Civil Code gives the Court, in the absence of express law, authority to proceed and decided according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent. The legislature has made no express law to cover the issue we have at hand.
The Louisiana Department of Conservation did not unitize this well until December 1, 1970 and a summary of drilling costs was submitted on January 13, 1971.
We are of the opinion that 90 days after unitization is a reasonable time for a person who drills on leased property, that is not within a unit at the time of completion of the well, to submit to the owners of interests, a sworn, detailed, itemized statement, the cost of the drilling.
The decision of the lower Court is affirmed.
Affirmed.
BOUTALL, J., dissenting with written reasons.
BOUTALL, Judge (dissenting):
There is no dispute as to the facts and the sole question is the interpretation of R.S. 30:103.1 and 103.2. Section 103.1 requires furnishing of a statement of costs of drilling operations to owners of unleased interest within 90 calendar days from the completion of the well. Section 103.2 provides that when the operator or producer permits (1) 90 calendar days to elapse from the completion of the well and (2) 15 additional calendar days to elapse from the date of receipt of written notice by Registered Mail from the owner of unleased interest calling attention to failure to comply with Section 103.1, the operator shall forfeit his right to demand from the owner contribution of the cost of drilling operations. The facts are that the information furnished on January 13, 1971 was more than 90 days from the completion of the well and more than 15 days from the letter of notice of failure. Storm points out however that the well was drilled before there was any unitization, and that he furnished the required information within 90 days of the unitization order, hence he contends he is in compliance with the statute because until such time as there is a unitization order, he has no way of compliance with the statute.
I cannot agree with this interpretation and read into the statute that the words 90 calendar days from the completion of the well mean also 90 calendar days from the unitization order. The wording of the statute is plain and admits of no such interpretation. The court should not add to this statute what the Legislature has not added. This statute is a penal statute and is subject to strict construction. See White v. Phillips Petroleum Company, 232 So.2d 83 (La.App. 3rd Cir. 1970).
Appellee Storm complains of insufficiency of time afforded the driller of a well completed before unitization. R.S. 30:10 requires that all orders requiring pooling shall be made after notice and hearing. It further provides for allocation of production and chargeability for reasonable expenditures for costs of development and operation of the pooled unit. The time and knowledge thus afforded by this section when added to the requirements of Section 103.1 (that the owner of the unleased interest must request the report and furnish his name and address to the operator) and Section 103.2 (that 15 additional calendar days must elapse from receipt of written notice of failure to comply) gives *726 sufficient time for furnishing the required information. It should be further noted that the operator receives the benefit of all production until the pooling order is effective.
I respectfully dissent.