SEXTON, Judge.
The defendant, Sun Oil Company, the operator of a forced drilling unit, appeals the judgment of the trial court awarding each of the plaintiffs $45,993.07 as a result of the defendant’s failure to comply with the disclosure requirements of LSA-R.S. 30:103.1 and LSA-R.S. 30:103.2. The defendant’s appeal also seeks to recover sums it asserts were overpaid the plaintiffs. The plaintiffs answer seeking additional statutory damages under LSA-R.S. 30:104. We affirm.
The dispute involves the interpretation of LSA-R.S. 30:103, 30:103.1 and 30:103.2 which read as follows:
§ 103. Operators to report to owners amount of oil or gas produced
Operators taking or producing oil or gas from lands who do not market through a pipe line company, shall report *1038 monthly to each owner of an oil or gas interest in the lands. These monthly reports shall show the amount of oil or gas produced from the lands during the previous calendar month, the amount disposed of, and the amount which has not been disposed of. Reports shall be sent by registered mail to each owner of a royalty, oil or gas interest, who has furnished his name and address to the operator.
§ 103.1 Operators and producers to report to owners of unleased oil and gas interests
Whenever there is included within a drilling unit, as authorized by the commissioner of conservation, lands producing oil or gas, or both, upon which the operator or producer has no valid oil, gas or mineral lease, said operator or producer shall report to the owners of said interests, by a sworn, detailed, itemized statement, the costs of the drilling operations of said unit within ninety calendar days from the completion of the well. Reports shall be sent by registered mail to each owner of an unleased oil or gas interest who has requested such report and furnished his name and address to the operator or producer.
§ 103.2 Failure to report; penalty
Whenever the operator or producer permits (1) ninety calendar days to elapse from completion of the well and (2) fifteen additional calendar days to elapse from date of receipt of written notice by registered mail from the owner or owners of unleased oil and gas interests calling attention to failure to comply with the provisions of R.S. 30:103.1, such operator or producer shall forfeit his right to demand contribution from the owner or owners of the unleased oil and gas interests for the costs of the drilling operations of the well.
The present suit was filed on January 10, 1984. Plaintiffs’ extensive prayer primarily sought judgment based on LSA-R.S. 30:103, et seq. for costs of production allegedly due plaintiffs as a result of the defendant’s failure to comply with the aforesaid statute. The plaintiffs also sought damages for tax and marketing losses caused by the failure of disclosure and for attorney’s fees. The defendant reconvened alleging overpayment of royalties to the plaintiffs. They asserted that accounting errors erroneously determined the payout date prematurely, and thus plaintiffs had been overpaid sums as royalties which should have been assessed against them as drilling costs.
This case was submitted upon a stipulation of facts and genuineness of documents.[1] Upon review thereof, the trial court found the following facts.
*1039 On July 25, 1977, Sun Oil proposed a farmout of the unleased mineral interest of the plaintiffs. Plaintiffs responded to the proposal requesting additional information and stating that at the time they were not prepared to make a decision. There was no indication that an agreement for a farmout was ever reached.
The operating agreement between Sun Oil, Sohio, Murphy and Munoco showed the interest of the parties to comprise 100% of the unit thus omitting the 40-acre interest of plaintiffs. The Bolinger No. 1 Well was completed in the unit on or about March 15, 1978. No notice of the commencement of drilling or the completion of the drilling operations was given to plaintiffs. A division order was prepared recognizing the plaintiffs’ interest but there is no evidence that a copy of this order was ever sent to the plaintiffs.
Plaintiffs, on September 28, 1978, made demand on the defendant for a report of the operator as required by LSA-R.S. 30:103.1 and 103.2, and also requested a copy of the operating agreement and accounting schedule. No response was forthcoming from the defendant until August 16, 1979, after repeated requests from the plaintiffs. The August 16th letter did not include an affidavit of the cost of drilling operations. It stated that the requested information had previously been furnished by an employee of the defendant on January 30, 1979. However, there was no evidence that that correspondence had been sent certified mail as required by statute, or was received by the plaintiffs.
The first compliance by the defendant to the request made by plaintiffs for statutory disclosure was on January 30, 1979.
On February 15,1980, plaintiffs, through their attorney, informed Sun Oil that they wished to become a party to the operating agreement and requested that defendant provide contracts and marketing information as to the quantity of production from the unit. In response to this letter, the defendant failed to make plaintiffs a party to the operating agreement or advise them as to the marketing arrangements. No statement was provided as to the quantity of unit production. Neither was it revealed *1040 to plaintiffs that commencing in July, 1979, plans for a workover recompletion of the well had been proposed and that non-operator parties had been informed as to expenditures requested for approval in recomplet-ing the well.
The first indication that plaintiffs had that the recompletion work had commenced on the well was on March 28, 1980, when a letter was sent to plaintiffs enclosing a current pay-out status on the well which showed additional expenditures for recom-pletion work.
Subsequent to being informed that the well had achieved pay-out status, on August 26, 1983, plaintiffs sent a letter requesting information concerning accounting and payment on the well. No response was received from defendant. On October 25, 1983, plaintiffs sent a demand letter requesting a report of expenditures as required by LSA-R.S. 30:103.1 and 103.2 within fifteen days from the letter. No response was ever received.
The trial court, in reaching a decision, divided its evaluation into two periods of time, the first commencing from the date of plaintiffs’ mineral interest purchase through the date recompletion operations were started in July, 1979.
Period 2 began at the commencement of recompletion operations until the petition was filed in January of 1984. The court found that the defendant had violated the provisions of LSA-R.S. 30:103, 30:103.1 and 103.2 in both Periods 1 and 2. Therefore, the court concluded that the defendant must forfeit the right to demand contribution from the plaintiffs for the cost of the drilling operations of the well in both periods. The defendant was cast in judgment to each plaintiff in the amount of $45,-993.07.
The plaintiffs’ requests for loss of profits for sale of oil and gas from the well and tax detriments resulting therefrom were denied. The court found the evidence inconclusive and insufficient to support these damages.
Defendant, Sun Oil, appeals the ruling of the trial court urging three assignments of error, which collectively raise the issues of whether Sun Oil has violated the provisions of LSA-R.S. 30:103.1 and 103.2 and whether the defendant was correctly denied recovery of sums it allegedly overpaid the plaintiffs. Plaintiffs answer and in brief assign as error the failure of the trial court to award plaintiffs damages under LSA-R.S. 30:104 based on its finding that the statute is criminal in nature.
As did the trial court, we will divide our evaluation into two periods of time.
STATUTORY
COMPLIANCE — PERIOD 1
(Original Drilling Costs)
The trial court considered that Period 1 extended from the plaintiffs’ mineral interest purchase through the date recompletion operations were started in July of 1979. The stipulations reveal, and the trial court correctly found, that the well was completed on the Gray RA SU G Unit on or about March 15, 1978. Thereafter, no notice was given to plaintiffs of the drilling of the well and no sworn, detailed, itemized statement of the cost of drilling operations was provided prior to a demand letter of September 28, 1978. The first purported compliance to the statutory requirement by the defendant was January 30, 1979, the date upon which a statement was prepared and appeared in the files of the defendant. There is no indication that this itemized statement was ever sent to the plaintiffs, nor that it was sent by registered mail as required by the statute. Even assuming it was dispatched, it necessarily was sent well beyond the fifteen days allowed by statute.
The correspondence of Mr. Robillard, Sun Oil Company's attorney, of January 21, 1980, appears to be the first correspondence actually sent from Sun which complied with the requirements of Section 103.-1. This letter, as found by the trial court, was sent some twenty-two months after the well had been completed and almost sixteen months after the September 28, 1978 demand letter.
Unfortunately, there are only two cases in our jurisprudence dealing with Sections *1041 103.1 and 103.2. These cases are Genmar Oil and Gas, Inc. v. Storm, 297 So.2d 722 (La.App. 4th Cir.1974), and Scurlock Oil Company v. Getty Oil Company, 324 So.2d 870 (La.App. 3d Cir.1975).
In Genmar Oil and Gas, Inc. v. Storm, supra, the court determined that where the Department of Conservation had not unitized gas producing wells until more than two months after the completion of the well, the submission of drilling costs to the plaintiff within 90 days after that unitization was within a reasonable time and thus did not require forfeiture of the right to demand contribution for drilling costs.
In Scurlock Oil Company v. Getty Oil Company, supra, the court likewise refused to deny contribution of costs to the drilling unit operator holding that while a suit contesting the validity of leases on the concerned property was pending, the disclosure requirements were suspended.
Here we are not faced with evaluating any such interruption of the statutory time periods for disclosure but with the necessity of interpreting the statute. It is clear from the stipulations, as indicated by the trial court, that the defendant did not in fact provide the information requested by the plaintiffs as required by LSA-R.S. 30:103.1 after receipt of appropriate notice. Section 103.1 and its penalty provision, 103.2, are clear, precise and mandatory. Defendant has no claim with respect to improper calculation of the time period involved. The defendant had more than am-pie opportunity to comply with the statutory provisions and indeed never satisfactorily complied therewith.
The defendant contends that the plaintiffs should be estopped from complaining of the failure of the defendant to adhere to Section 103.1 because of the February 15, 1980 letter of plaintiffs’ attorney, George Wear, referenced in point 14 of our summary of stipulations. This letter accepted Mr. Robillard’s previous response as “evidence of good faith” on the part of the defendant.
The plaintiffs reply that the defendant did not plead estoppel and further assert in the alternative that the elements of estop-pel are not present under the instant circumstances. The defendant counters that the plaintiffs’ petition pled that the plaintiffs had accepted the reference response as a “good faith effort” and therefore the plaintiffs made a judicial confession in that regard.
We do not address the legal maze suggested by the aforementioned contentions and countercontentions. In our view, the allegations of the plaintiffs’ petition and the statement in the stipulation at issue are simply recitations of the state of mind of the plaintiffs upon receipt of Mr. Robillard’s inaccurate response. We thus agree with and adopt the view of the trial court on the subject. The trial court found that the statement was not a waiver, and even if so, found that it was obtained by false and inaccurate information attributable to the fault of the defendant.[2]
*1042 We therefore determine that the trial court correctly found a violation of Section 103.1 during Period 1 and appropriately assessed the penalty provided by Section 103.2.
STATUTORY COMPLIANCE—PERIOD 2
(Recompletion Costs)
The trial court ran Period 2 from the commencement of recompletion operations in July, 1979, until the petition was filed on January 10, 1984. Once again, the trial court found that Sun Oil failed to properly respond to plaintiffs’ statutory requests and assessed penalties per Section 103.2. Thus, the court denied defendant’s contribution for recompletion costs during this period.
In asserting their claim for recompletion costs withheld, plaintiffs rely on the letter of Mr. Wear of October 25, 1983, referred to in Paragraph 18 of our summary of the stipulations. As that paragraph shows, there was no response to this demand.
The trial court construed Section 103.1 as being broad enough to encompass reworking operations. The defendant does not disagree with this interpretation of the statute. However, as we appreciate Sun Oil’s contention, it is that plaintiffs’ letter did not amount to a demand for drilling costs—or in this case reworking costs—but rather sought monthly production reports which are not covered by Sections 103.1 and 103.2. Thus, defendant contends that there was no demand under Section 103.1 which would trigger the penalties of Section 103.2.
We find no merit to the argument of the defendant in this respect. While Mr. Wear’s letter of October 25, 1983 did request “a report of expenditures on the well” and “accounting for production,” the letter specifically referenced LSA-R.S. 30:103.1 and 103.2. The letter specifically complained of a failure to furnish adequate reports of expenditures after completion of the initial well. Moreover, the letter threatened legal action to recover sums owing without being burdened with reworking costs.
In our judgment, the terms of the letter are sufficiently adequate to notice the defendant within the purview of Section 103.-1, and thus trigger the penalties for failure to comply. As the stipulations indicate, and the trial court found, there was no response. Therefore, we agree that the trial court correctly awarded judgment to the plaintiffs for any drilling costs retained by defendant with respect to plaintiffs’ interest during Period 2.
ADDITIONAL PENALTIES UNDER LSA-R.S. 30:104
Plaintiffs also urge that the trial court was in error in refusing to award penalties to it under LSA-R.S. 30:104[3] due to defendant’s failure to furnish the monthly reports required by Section 103. The plaintiffs contend that this statute affords them civil recovery of this fine against the defendant.
We agree with the trial court determination that LSA-R.S. 30:104 is a criminal statute and does not contemplate the possi *1043 bility of fines being paid to the owner of a mineral interest. The penalty provided clearly appears to exist for the purpose of inflicting punishment upon the violator and is not designed for restitution or indemnification. It is a penalty for willful disobedience of the law. See McHugh v. Placid Oil Company, 206 La. 511, 19 So.2d 221 (1944). We are buttressed in this view by the specific penality provisions in favor of the owners of unleased interest provided against the producer by Section 103.2.
We agree that the penalty provided by Section 104 is criminal in nature. Therefore, there can be no civil recovery by the plaintiffs.
OVERPAYMENT OF ROYALTIES
Defendant, Sun Oil Company, through reconventional demand, requested judgment against James and Jack Rivers for $8,813.19 each as a result of a purported overpayment of their production interests in the well. The defendant contends that through an accounting error, the payout date of the unit well was erroneously calculated as having occurred on May 31, 1982, when in actuality the well did not pay out until December 1, 1983. For this reason, it claims payments previously made were not owed and should have been retained and applied to the drilling costs. While a true error may have been made in calculations, it is irrelevant at what date payments commenced being made to the Rivers as any withholding by Sun Oil of the subject monies paid out may be categorized as costs. The Rivers have been relieved of that duty by Sun Oil’s violation of the disclosure statutes.
We therefore conclude that the judgment of the trial court is correct in all respects. It is therefore affirmed.
AFFIRMED.

.We summarize the pertinent parts of the 20 pages of stipulations as follows:
1. By order of the Department of Conservation effective November 8, 1973, units for the Gray Sand in the South Sarepta Field, Bossier Parish, Louisiana, were formed. One of the units established is Gray RA SU G comprised of land in Section 20, Township 22 North, Range 11 West. Sun Oil Company is the operator of this unit.
2. On July 29, 1977, defendant, Sun Oil, as operator, entered into an operating agreement with Sohio Petroleum Company, Murphy Oil Corporation, and Munoco Company as non-operators.
3. Plaintiffs, James Rivers and Jack Rivers are owners of the mineral interests underlying 40 acres of the Gray RA SU G Unit.
4. By letter of July 25, 1977, Sun Oil Company proposed a farmout of the unleased mineral interest of James and Jack Rivers.
5. Attorney for James and Jack Rivers, George M. Wear, responded to Sun’s proposal on August 5, 1977, requesting additional information on behalf of his clients in order to make a decision. Two letters from Sun Oil Company were forthcoming in response to this request.
6. A search of all records of Sun Oil Company in response to a subpoena does not disclose any further contact or communication from Sun Oil to James or Jack Rivers or their attorney regarding the unit or the well drilled thereon prior to 1979.
7. Sun Oil Company prepared a division order which recognized the interest of James and Jack Rivers in the production from the Gray Sand RA SU G Unit in 1978. The files of Sun Oil Company do not disclose correspondence to the Rivers enclosing this division order.
8. James and Jack Rivers made demand upon Sun Oil Company for information that an operator is required to furnish non-operators under LSA-R.S. 30:103.1 and 103.2 by letter dated September 28, 1978, and further for the operating agreement and accounting schedule for their review and approval.
*1039 9. A second demand identical to the first was made on January 17, 1979.
10. The files of Sun Oil contain a copy of a letter dated January 30, 1979, from Jack Norman of Sun Oil Company addressed to James and Jack Rivers. The files contain no evidence that the letter was mailed and no evidence of Rivers’ receipt of the letter.
11. James and Jack Rivers would testify that the only answer received to their letters of September 28, 1978, and January 17, 1979, was the letter of Keith Lydick of Sun Oil dated August 16, 1979, which indicated that the information previously requested had been furnished by Jack Norman on January 30, 1979.
12. James and Jack Rivers, through their attorney, made a follow-up demand for information on the well by letter dated January 14, 1980.
13. Donald F. Robillard, attorney for Sun Oil, responded to the letter of January 14, 1980, by a telephone call and by letter dated January 21, 1980, with a reproduced copy of the affidavit of itemized drilling and equipment costs, a copy of the operating agreement that was asserted to have been mailed on January 30, 1979, and payout status of the well through December 31, 1979. Robillard reported the well to be near payout and a report on the well at payout or by March 31, 1980 was proposed.
14. By letter dated February 15, 1980, George Wear, attorney for the Rivers, accepted the response of Robillard as evidence of good faith on the part of Sun Oil and requested that the Rivers become parties to the operating agreement.
15. The payout statement of March 1, 1980, and of December 31, 1979, indicated that the information of Donald Robillard was in error.
16. In 1979, all non-operators approved plans for reworking of the well. There was a very substantial cost for recompleting the well which was not communicated to the Rivers even though there were two requests for information by them or their attorney.
17. In 1983, James and Jack Rivers commenced to receive statements and charges for operations for the Gray RA SU G.
18. James Rivers again referred the matter of Gray RA SU G to his attorney and by letter dated October 25, 1983, a demand was made on behalf of the Rivers for compliance with the statutory disclosure requirements. This demand made by registered mail was received by Sun on October 27, 1983. Sun’s files were examined and did not contain a copy of any letter in response.
19. The petition in this proceeding was filed by the plaintiffs on January 10, 1984.
20. Sun Oil Company admits that monthly reports required by LSA-R.S. 30:103 have never been furnished to James and Jack Rivers.

. We agree with and adopt the trial court’s findings that:
Prior to the February 15 letter, Attorney Wear had received the January 21 letter from Attorney Robillard, representing Sun. That letter had enclosed the itemized statement of well costs, a copy of the operating agreement, and a payout status statement as of December 31, 1979. The February 15 letter by Attorney Wear was based on the information received in the January 21 letter from Attorney Robil-lard and probably during a telephone conversation with Attorney Robillard, about which there is some reference in the evidence, but no actual evidence of the contents of the call. The information provided by Attorney Robil-lard was incorrect in several respects. First, there was no disclosure of the fact that recom-pletion operations had already begun in July 1979, and were either completed or nearing completion. There was no indication that there would be additional drilling costs charged to plaintiffs, other than those shown on the itemized statement which was finally sent to plaintiffs. Secondly, the payout status as of December 31, 1979 was incorrect, because the additional drilling costs for the re-completion had not been taken into consideration. Corrected payout status statements were sent as of March 31, 1982 and April 30, 1982, which were considerably different from the one enclosed in the January 21 letter. Even these payout status statements have now been declared to be inaccurate by the allegations contained in defendant’s reconventional demand. In addition, defendant did not comply with the requests made by Attorney Wear in his letter of February 15. First, defendant did not make plaintiffs parties to the operat *1042 ing agreement; second, defendant did not advise Attorney Wear as to the contract or marketing arrangements as to the oil being produced; and third, defendant did not provide a statement of the quantity of the unit production until quite some time later.
In view of defendant's failure to make full disclosure of the workover, or recompletion expenditures and the AFE that had been approved in July 1979 by the other non-operator owners of mineral interests in the unit, and also in view of the failure of defendant to comply with three requests made by Attorney Wear in the February 15 letter, this Court does not feel that the statement made in the letter of February 15 can be construed as a waiver of any of plaintiffs' rights under R.S. 30:103.1. If the letter were to be construed as such a waiver, this Court feels that it was obtained on the basis of false and incomplete information, all of which is attributable to the fault of the defendant.

. LSA-R.S. 30:104 reads as follows:
§ 104. Failure to report punishable; fíne Whoever fails to make the reports, required of him by R.S. 30:103 shall be fined not less than twenty-five dollars, nor more than one hundred dollars for each failure to report to any individual royalty or mineral owner.